M. ANDREW WOODMANSEE (BAR NO. 201780)
MAWoodmansee@mofo.com
DEAN S. ATYIA (BAR NO. 298615)
DAtyia@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: 858.720.5100
Facsimile: 858.720.5125

DAVID LOY (BAR NO. 229235)
DavidLoy@aclusandiego.org
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California 92138-7131
Telephone: 619.232.2121
Facsimile: 619.232.0036

Attorneys for Plaintiff
PETER STERN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STERN,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF ENCINITAS,<br><br>        Defendant. | Case No. **'15CV1699 JM   RBB**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Peter Stern ("Mr. Stern") brings this action against the City of Encinitas ("Encinitas" or "City") and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action to remedy violations by the City of Encinitas of Plaintiff's right to freedom of speech guaranteed by the First Amendment to the United States Constitution and Article I, Section 2 of the California Constitution. The City has adopted a stringent cap on yard signs that strangles the ability to

engage in political speech.  Given the multitude of candidates and issues before the public at any given time, the cap violates the hallowed right of homeowners to speak out to their communities and neighbors.

2.      The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.  The First Amendment applies to the States and local governments via the Fourteenth Amendment.  Article I, Section 2 of the California Constitution states that "[a] law may not restrain or abridge liberty of speech . . . ."

3.      Political speech "occupies the core of the protection afforded by the First Amendment."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995).  Indeed, the Supreme Court recognizes that protection of political speech is the most compelling and urgent function of the First Amendment.  *Eu v. San Francisco Cty. Democratic Cent. Comm'n*, 489 U.S. 214, 223 (1989).

4.      The freedoms and protections afforded by the First Amendment encompass an individual's right to place signs in his or her yard displaying political messages or affiliations.  *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994).

5.      Political signage often supports or opposes particular candidates or causes and forms an essential part of public discourse.  To restrict the right to speak through yard signs visible from "public streets and sidewalks" threatens the right of homeowners to participate in "the exchange of ideas," because streets and sidewalks "remain one of the few places where a speaker can be confident that he is not simply preaching to the choir.  With respect to other means of communication, an individual confronted with an uncomfortable message can always turn the page, change the channel, or leave the Web site.  Not so on public streets and sidewalks."  *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014).

6.      Americans have long used signs to participate in the political process.  Participation is so important in this context, and so constitutionally protected,

because it may ultimately influence the governmental framework by which we all agree to be bound.

7.  Residential signs are "a venerable means of communication that is both unique and important." *City of Ladue*, 512 U.S. at 54. They "both reflect and animate change in the life of a community" and "play an important part in political campaigns, during which they are displayed to signal the resident's support for particular candidates, parties, or causes." *Id.* at 54-55.

8.  The Supreme Court has identified two ways in which yard signs are an especially important form of speech. First, to display "a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means," because the location of the sign signifies endorsement by the property owner, and "the identity of the speaker is an important component of many attempts to persuade." *Id.* at 56. Second, "[r]esidential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute." *Id.* at 57.

9.  Through its sign ordinance, the City of Encinitas unconstitutionally prohibits an individual property owner from posting more than two temporary yard signs at any time outside of thirty days before an election and three days afterward. Encinitas, Cal., Mun. Code (EMC) §§ 2.16.040; 30.60.080(C).

10. Upon information and belief, the City enforces these provisions of the sign ordinance against Encinitas residents and homeowners.

11. To remedy these violations, Mr. Stern seeks injunctive and declaratory relief against the City.

## THE PARTIES

12. Mr. Stern is and at all relevant times has been a citizen of the United States. Mr. Stern is a registered voter in the State of California. Mr. Stern has been a resident of Encinitas for the past 27 years.

sd-663622

1   13.     Defendant City of Encinitas is a public governmental entity located in
2   San Diego County, California, and is subject to suit under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

4   14.     This Court has jurisdiction over Mr. Stern's First Amendment claim
5   under 28 U.S.C. §§ 1331, 1343(a)(3).  The Court also has supplemental jurisdiction
6   over Mr. Stern's state constitutional claim under 28 U.S.C. § 1367.

7   15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)
8   because the events or omissions giving rise to this action occurred within this
9   district and Defendant resides in this district.

## FACTS

11  16.     Plaintiff Mr. Stern has been a resident of Encinitas since 1988.  For the
12  past 27 years, it has been his home.  Mr. Stern is a retired attorney, and he now is
13  an author and political activist.  He cares deeply about how the government runs his
14  city, state, and country.  As such, he is very active in many causes and seeks to
15  inform his friends and neighbors regarding the merits of issues that are important to
16  him.  One of the ways he does this is by posting yard signs on his property to
17  advocate for his views and favored candidates.

18  17.     Since the age of 18, Mr. Stern has never missed voting in a general
19  election.  He has also participated without fail in special and primary elections,
20  volunteers regularly to support Encinitas' special elections, and contributes his
21  time, funds, and efforts to support local, state, and national elections and political
22  campaigns.

23  18.     Mr. Stern has diligently complied with Encinitas' unconstitutional
24  ordinances by refraining from placing more than two signs in his yard at a time
25  outside of the narrow election-based window.  Although Mr. Stern often has wished
26  and currently wishes to post more than two signs in his yard, regarding more than
27  two issues or candidates, he complies with the ordinance and is therefore forced to
28  refrain from engaging in protected speech outside of the narrow election-based

window.  During that window, he has regularly placed more than two signs in his yard to support or oppose various candidates and causes.  But for the two-sign cap, he would do so throughout the year.

19. The City's sign ordinance has chilled his right to free speech, as Mr. Stern reasonably fears the City will enforce the ordinance against him if he posts three or more yard signs outside the narrow election-based window.

20. The two-sign cap significantly impairs Mr. Stern's ability to engage in political speech in three ways.

21. First, campaigns begin long before the thirty days prior to an election, and effective participation in those campaigns requires the ability to post signs year-round.[1]  Given the power of incumbency—which often includes name recognition resulting from years in office and free media coverage—it is important that non-incumbent candidates and their supporters build name recognition through the especially important means of yard signs, which takes much longer than thirty days.  As one of the least expensive means by which a candidate or cause may achieve name recognition among voters, yard signs convey a significant message in demonstrating that residents are supporting a candidate or cause.

22. Second, in any given election, a voter is routinely asked to vote on more than two issues or candidates.  California is a prime example of direct democracy in America.  For example, in the November 2014 election, a resident of Encinitas could vote on at least:

- **Nine** state executive positions, including Governor, Lieutenant Governor, Secretary of State, Controller, Treasurer, Attorney General,

---

[1] By attributing "her election success" in part "to 18 months of campaigning," the City's mayor confirmed campaigns begin well before an election. Barbara Henry, *Gaspar Easily Grabs Encinitas Mayor Seat*, San Diego Union-Tribune (Nov. 4, 2014, 8:30 PM), http://www.utsandiego.com/news/2014/nov/04/encinitas-race-favors-xx-in-early-returns/  (last visited July 30, 2015).

5 COMPLAINT

sd-663622

1    State Superintendent of Public Instruction, State Board of Equalization
2    Member, and Insurance Commissioner;
3    - **One** U.S. Representative;
4    - **Two** state legislature positions, including State Senator and Member of
5       the State Assembly;
6    - **Fourteen** state judicial positions, with retention votes on three
7       Supreme Court justices, ten Court of Appeal justices, and one
8       contested Superior Court position;
9    - **Six** local school board positions;
10   - **Two** city positions, including Mayor and a City Council seat;
11   - **Six** state propositions; and
12   - **One** local proposition.[2]

In total, Mr. Stern and the residents of Encinitas could have voted on at least 41 elected positions or propositions, but for the vast majority of the year, they could only display yard signs for or against two of those candidates or causes. The large number of candidates and issues on the ballot will continue in the future. For example, in 2016 Encinitas will have four out of five City Council seats up for election, in addition to other candidates and issues on the ballot.[3]

23.   Third, there are many causes and issues independent of elections that remain important topics of political speech for yard signs. For example, one might wish to oppose a war or speak for peace, as did the plaintiff in *City of Ladue,* whose signs read, "Say No to War in the Persian Gulf … For Peace in the Gulf." 512 U.S.

---

[2] *SMARTVOTER San Diego County Ballot*, League of Women Voters of California Education Fund, http://www.smartvoter.org/2014/11/04/ca/sd/ballot.html (last updated Oct. 2, 2014, last visited July 30, 2015).

[3] Barbara Henry, *Encinitas Names New City Manager*, San Diego Union-Tribune (July 2, 2015, 3:46 PM), http://www.sandiegouniontribune.com/news/2015/jul/02/encinitas-new-city-manager (last visited July 30, 2015).

1   at 45-46.  Other issues include green energy, separation of church and state,
2   marriage equality, abortion, climate change, littering, water conservation, pollution,
3   and campaign finance reform, for all of which yard signs are easily obtainable.[4]

4       24.    The City has no substantial interest in jeopardy that justifies restricting
5   the number of temporary yard signs in residential areas.  For example, the interests
6   of private property owners are sufficient to protect the City from aesthetic or safety
7   hazards resulting from proliferation of yard signs.

8       25.    To the extent the City may have substantial interests in jeopardy, the
9   two-sign cap burdens far more speech than necessary to protect those interests.

10      26.    The City has numerous readily available alternatives to protect any
11  substantial interests it might have in jeopardy, for example by regulating the size,
12  height, design, condition, and placement of signs, which it already does.  EMC
13  §§ 30.60.050, 30.60.070, 30.60.080.  Accordingly, the two-sign cap is not narrowly
14  tailored to any substantial interest of the City.

15      27.    The City does not authorize or provide sufficient alternatives to
16  engaging in political speech through temporary signs in one's own yard.

17      28.    Potential alternatives might include speeches in public places, door to
18  door and public canvassing, distributing handbills, appearing at group meetings,
19  advertising, or posting signs in local businesses and automobiles.  However,
20  compared to yard signs, these alternatives are insufficient because they are
21  excessively time-consuming and expensive.  The same is true for the one permanent
22  sign allowed on residential property under EMC § 30.60.070, which in any event is
23  limited to five square feet and insufficient to cover the range of candidates and
24  causes open to comment at any given time, either by itself or in combination with
25  two temporary signs.

---

[4] *See, e.g.*, *Political Opinion*, BuildASign.com, http://www.buildasign.com/CustomSigns/browse-political-opinion (last visited July 29, 2015).

29. Mr. Stern, furthermore, is a disabled person as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102(1). Temporary yard signs are the most available, accessible, and convenient mode of political expression at Mr. Stern's disposal.

30. In any event, means of political communication are not fungible, and yard signs have unique advantages in conveying political messages because of their identification with a particular property owner, unique ability to reach neighbors and passers-by, and demonstrated effectiveness.

31. The City's limited exemption for "window signs" is not a sufficient alternative to yard signs, because (a) "window signage is limited to a maximum of 90 days"; (b) "the total area of such signs shall not exceed 25 percent of the window area," which will often be insufficient to accommodate signs concerning each candidate or ballot measure at issue; and (c) the visibility of window signs to the public may be impaired or precluded by trees, fences, or other physical obstructions. EMC § 30.60.060(N).

32. Nor is the use of "[b]alloons, flags and pennants" a sufficient alternative means of communication. EMC § 30.60.080(F). First, nothing in the ordinance suggests that balloons, flags, or pennants are exempt from the two-sign cap if they "convey[] a message in pictorial, symbolic, or worded form, placed for display to the outdoor public." EMC § 30.60.020(A). Second, even if they are exempt, they do not substitute for yard signs, because they are not as easily read, and may not be read at all if a wind is not blowing, and may only be displayed during daylight. EMC § 30.60.080(F).

33. Message substitution does not provide a sufficient alternative. Although the City allows substitution of a "legally existing noncommercial message" on a given sign, EMC § 30.60.050(M), that provision does not increase the number of yard signs that a homeowner may post. At best, it would allow a homeowner to substitute one sign or message for another on an otherwise allowed

1  sign, which does not increase the number of yard signs or alleviate or cure the
2  problems of the two-sign cap.

3      34.    Nor is it a sufficient alternative for a homeowner to place multiple
4  messages on individual signs. Typical political yard signs measure 18 inches by 24
5  inches, or 3 square feet on a side. To be effective, the messages displayed on such
6  signs must be clear, graphic, and easy to read at a glance. If a homeowner must
7  shoehorn multiple messages into three square feet, the messages would become
8  effectively unreadable to passing drivers and others within the target audience.
9  Indeed, drivers would be unable to read small messages without significant
10 distraction, which would undermine the stated purpose of the sign ordinance "to
11 eliminate traffic hazards … and to ensure that information is presented safely and
12 effectively." EMC § 30.60.010(A).

13     35.    Finally, it is not sufficient to require homeowners to place different
14 messages on each side of their allotted two yard signs. At best, that would allow
15 homeowners to comment on four candidates or issues rather than two, which
16 remains woefully inadequate to protect the hallowed right to political speech
17 through yard signs in the circumstances of this case.

## CLAIMS FOR RELIEF

### Claim One

**(Violation of the First Amendment – Freedom of Speech)**

21     36.    Mr. Stern incorporates by reference and re-alleges each preceding
22 paragraph as if fully set forth herein.

23     37.    Mr. Stern has the right to freedom of speech provided for by the First
24 Amendment to the United States Constitution, which includes the right to post signs
25 in his yard that display political messages.

26     38.    By adopting, maintaining, and enforcing the two-sign cap, the City has
27 violated and continues to violate Mr. Stern's First Amendment rights, resulting in
28 irreparable harm as a matter of law.

## Claim Two

### (Violation of the California Constitution – Freedom of Speech)

39. Mr. Stern incorporates by reference and re-alleges each preceding paragraph as if fully set forth herein.

40. Mr. Stern has the right to be free from laws restraining or abridging his speech under Article I, Section 2 of the California Constitution.

41. The two-sign cap unlawfully restrains or abridges Mr. Stern's ability to engage in speech through political yard signs.

42. By adopting, maintaining, and enforcing the two-sign cap, the City has violated and continues to violate Mr. Stern's rights under Article I, Section 2, resulting in irreparable harm as a matter of law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

- Preliminarily and permanently enjoin the City of Encinitas, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with the City or any of the foregoing persons from enforcing the two-sign cap contained in EMC § 30.60.080(C) against Plaintiff or otherwise preventing, impeding, or interfering with Plaintiff's First Amendment right to post more than two temporary signs in his yard at any given time;
- Declare the two-sign cap and any efforts to enforce it to be unconstitutional;
- Award Plaintiff attorneys' fees and costs as authorized by 42 U.S.C. § 1988, Cal. Code Civ. Proc. § 1021.5, Fed. R. Civ. P. 54, or any other applicable law.
- Award such other relief as the Court deems proper.

Dated:  July 30, 2015              MORRISON & FOERSTER LLP


By: /s/ M. Andrew Woodmansee
    M. Andrew Woodmansee

Attorneys for Plaintiff
PETER STERN

M. ANDREW WOODMANSEE (BAR NO. 201780)
MAWoodmansee@mofo.com
DEAN S. ATYIA (BAR NO. 298615)
DAtyia@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone:  858.720.5100
Facsimile:  858.720.5125

DAVID LOY (Bar No. 229235)
DavidLoy@aclusandiego.org
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California  92138-7131
Telephone: 619.232.2121
Facsimile: 619.232.0036